FILED
2014 Aug-05  AM 11:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DALLAS R. THREADGILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Civil Action No.** |
| **CAROLYN W. COLVIN** | ) | **5:12-CV-03550-MHH** |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), claimant Dallas R. Threadgill seeks judicial review of a final adverse decision of the Commissioner of Social Security[1] affirming the decision of the Administrative Law Judge ("ALJ") who denied Mr. Threadgill's claim for a period of disability and disability insurance benefits. (Doc. 1). As discussed below, the Court finds that substantial evidence supports the ALJ's decision, so the Court affirms the Commissioner's ruling.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Therefore, she should be substituted for Commissioner Michael J. Astrue as Defendant in this suit. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer affecting the parties' substantial rights must be disregarded.").

**<u>STANDARD OF REVIEW</u>**:

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and her 'legal conclusions with close scrutiny.'"  *Riggs v. Soc. Sec. Admin. Comm'r*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it."  *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis,

then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## PROCEDURAL AND FACTUAL BACKGROUND:

On January 7, 2011, Mr. Threadgill applied for a period of disability and disability insurance benefits. (Doc. 6-6, p. 9). Mr. Threadgill filed an application for disability insurance benefits under Title II of the Social Security Act, with an alleged onset date of February 28, 2005. (Doc. 6-6, p. 9). The onset date was subsequently amended to June 2009. (Doc. 6-3, p. 37).

The Social Security Administration denied Mr. Threadgill's application on March 4, 2011. (Doc. 6-5, p. 3). At Mr. Threadgill's request, on November 1, 2011, an ALJ conducted a hearing concerning Mr. Threadgill's application. (Doc. 6-3, pp. 10-23). Mr. Threadgill and an impartial vocational expert testified at the hearing. (Doc. 6-3, p. 13). At the time of his hearing, Mr. Threadgill was 47 years old.[2] Mr. Threadgill has a high school education. (Doc. 6-7, p. 25; Doc. 6-3, p. 38). His past relevant work experience is as a security guard supervisor and golf course maintenance worker. (Doc. 6-3, p. 39).

On January 12, 2012, the ALJ denied Mr. Threadgill's request for disability benefits, concluding that Mr. Threadgill did not have an impairment or a

---

[2] At 47 years of age, 20 C.F.R. §§404.1563(c) and 416.963(c) designate Mr. Threadgill as a "young person." (*See* Doc. 6-3, p. 23; Doc. 6-6, p. 7).

combination of impairments that meet or medically equal the severity of one of the listed impairments in the regulations. (Doc. 6-3, p. 16).   In her eleven page decision, the ALJ described the "five-step sequential evaluation process for determining whether an individual is disabled" and explained that "[i]f it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step."  (Doc. 6-3, p. 14).

The ALJ found that Mr. Threadgill had not "engaged in substantial gainful activity since June 1, 2009, the alleged onset date."  (Doc. 6-3, p. 15).  In addition, the ALJ concluded that Mr. Threadgill had "the following severe impairments: lumbar degenerative disc disease, left knee chondromalacia and obesity."  (Doc. 6-3, p. 15).  The ALJ stated that the severe impairments "more than minimally impact [Mr. Threadgill's] ability to perform basic work activity."  (Doc. 6-3, p. 15).  Still, the ALJ opined that:

> [Mr. Threadgill's] left knee chondromalacia fails to meet the severity required for listing 1.02 ((Major dysfunction of a joint (due to any cause)).   Listing 1.02 ((Major dysfunction of a joint (due to any cause)) requires gross anatomical deformity, chronic pain and stiffness, with signs of limitation of motion or other abnormal motion of the affected joint, and findings on appropriate medically accepted imaging of joint space narrowing, bony destruction or ankylosis, with involvement in one major peripheral weight-bearing joint resulting in inability to ambulate effectively as defined in 1.00B2b…

> [Mr. Threadgill's] lumbar degenerative disc disease also does not meet the severity requirements for listing 1.04 (Disorders of the spine), because the record, consistent with the findings below, does not demonstrate compromise of a nerve root or the spinal cord with additional findings of: (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight-leg raising; or (B) appropriately documented spinal arachnoiditis with severe burning or painful dysesthesia resulting in the need to change positions more than once every two hours; or (C) lumbar spinal stenosis resulting in pseudoclaudication with an inability to ambulate effectively.

(Doc. 6-3, p. 16).

Based on these factual findings, the ALJ concluded that Mr. Threadgill had the "residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except [that he] can occasional[ly] bend, but cannot climb, kneel, crawl or crouch.  Additionally, [Mr. Threadgill] requires an option to sit or stand at will."  (Doc. 6-3, pp. 16-17).

In reaching her conclusion, the ALJ considered a residual functional capacity assessment by Dr. Allison Newman, one of Mr. Threadgill's treating physicians.  Dr. Newman's assessment indicated that Mr. Threadgill could sit for 1-2 hours, stand for 0-1 hour, and walk for 0-1 hour at a time in an 8-hour day.  (Doc. 6-9, p. 78).  Dr. Newman also indicated that Mr. Threadgill can only occasionally lift up to 25 pounds, occasionally carry up to 10 pounds, occasionally

use his arms, hands and legs to push and pull, occasionally bend and reach, and frequently use his hands for simple grasping, fine manipulation, fingering and handling. (Doc. 6-9, p. 79). Dr. Newman found that Mr. Threadgill was totally restricted from unprotected heights, and moderately restricted from moving machinery, marked changes in temperature and humidity, driving automotive equipment, dust fumes and gases. (Doc. 6-9, p. 79). The ALJ assigned no weight to Dr. Newman's medical opinion, as the "form note[d] that the form was filled out and completed according to the patient's account and that the doctor had not seen [Mr. Threadgill] in a working environment." (Doc. 6-3, p. 20; Doc. 6-9, pp. 78-80).

The ALJ also took into account the results of an RFC analysis by Dr. Tony Ruse, another treating physician. Dr. Ruse found that Mr. Threadgill could sit for 1 hour, stand for 1 hour, and walk for 1 hour at a time as well as sit for 2 hours, stand for 2 hours, and walk for 2 hours total in an 8-hour day. (Doc. 6-9, p. 83). According to Dr. Ruse, Mr. Threadgill can only occasionally lift up to 5 pounds, occasionally carry up to 5 pounds, occasionally use his arms, hands and legs to push and pull, never bend, squat, crawl or climb, occasionally reach, and frequently use his hands for simple grasping, fine manipulation, fingering and handling. (Doc. 6-9, p. 83). Dr. Ruse's RFC stated that Mr. Threadgill had no restriction from unprotected heights, moving machinery, marked changes in

temperature and humidity, driving automotive equipment, dust fumes and gases. (Doc. 6-9, p. 79).  Dr. Ruse found that Mr. Threadgill had moderately severe chronic and continuing pain, objectively signified by joint and spinal deformity, muscle spasms, and X-ray, and would likely have to miss three or more days of work per month as a result of his condition.  (Doc. 6-9, p. 85).  The ALJ gave limited weight to Dr. Ruse's findings because the "objective medical evidence of record does not fully support[] the checked limitations."  (Doc. 6-3, p. 20).

Ultimately, the ALJ found that Mr. Threadgill "is capable of performing his past relevant work as a security guard supervisor . . . which does not require the performance of work-related activities precluded by [Mr. Threadgill's] residual functional capacity."  (Doc. 6-3, p. 21).  The ALJ reasoned:

> In comparing [Mr. Threadgill]'s residual functional capacity with the physical and mental demands of his past relevant work, the undersigned finds that [Mr. Threadgill] is able to perform his past relevant work as a security guard supervisor as he actually performed.  The vocational expert testified that an individual with the residual functional capacity determined in this decision would be capable of performing [Mr. Threadgill's] past relevant work as a security guard supervisor according to [Mr. Threadgill's] hearing testimony regarding the requirements for his job.  [Mr. Threadgill] testified this work activity was mostly sedentary with occasional lifting of eight to ten pounds.  Based on [Mr. Threadgill's] hearing testimony regarding his actual performance of his security guard supervisor position, and the vocational expert's hearing testimony that an individual with [Mr. Threadgill's] residual functional

> capacity would be capable of performing his past relevant work as a security guard supervisor as he performed it, the undersigned finds [Mr. Threadgill] retains the capacity to perform this work activity as he performed it.

(Doc. 6-3, p. 21).  Consequently, the ALJ decided that Mr. Threadgill "is not disabled under sections 216(i) and 223(d) of the Social Security Act."  (Doc. 6-3, p. 23).  The ALJ found that Mr. Threadgill retained the residual functional capacity to perform work-related activities at the sedentary level of physical exertion, except that he can occasionally bend, cannot climb, kneel, crawl or crouch.  (Doc. 6-3, pp. 16-17).  The ALJ also determined that Mr. Threadgill requires an option to sit or stand at will and that there would be jobs in the national economy that would accommodate Mr. Threadgill's limitations, including his past relevant work. (Doc. 6-3, pp. 17, 21).

On August 8, 2012, this became the final decision of the Commissioner of the Social Security Administration when the Appeals Council refused to review the ALJ's decision.  (Doc. 6-3, p. 2).  Having exhausted all administrative remedies, Mr. Threadgill filed this action for judicial review pursuant to section 205 of the Social Security Act and 42 U.S.C. §405(g).

**ANALYSIS**:

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).  "A

claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant must prove that he is disabled. *Id.* (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003).   To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis. *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted).   "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.*   (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Here, in assessing whether Mr. Threadgill is disabled, the ALJ found that Mr. Threadgill's lumbar degenerative disc disease, left knee chondromalacia, and

obesity constitute severe physical impairments and "more than minimally impact [Mr. Threadgill's] ability to perform basic work activity."  (Doc. 6-3, p. 15). Nevertheless, the ALJ concluded that Mr. Threadgill is not disabled because he is able to perform his past relevant work as a security guard supervisor despite his impairments.

Mr. Threadgill argues that he is entitled to relief from the ALJ's decision because "the ALJ failed to articulate good cause for according less weight to the opinions of [Mr. Threadgill's] treating physicians, [Dr. Newman and Dr. Ruse]." (Doc. 9, p. 5).  The Court finds that this contention is without merit.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Id*.; *see also Crawford*, 363 F.3d at 1159.  "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error.  'Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.'" *Gaskin*, 533 Fed.

Appx. at 931 (citing *Lewis,* 125 F.3d at 1440, and quoting *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011)).

In this case, the ALJ clearly articulated her reasons for affording the treating physician's opinions no weight and little weight.  The ALJ gave no weight to Dr. Newman's RFC assessment because the doctor's report contained the doctor's handwritten notes stating that the form was "filled out and completed according to the patient's account and that [Dr. Newman] had not seen [Mr. Threadgill] in a working environment."  (Doc. 6-3, p. 20; *see also* Doc. 6-9, p. 79).  Thus, Dr. Newman's RFC assessment was conclusory and was not based upon an independent examination.  Consequently, the ALJ did not err in giving no weight to the RFC assessment.  (Doc. 6-3, p. 20).

The record also supports the ALJ's decision to give little weight to Dr. Ruse's RFC assessment.  The ALJ stated that the check marks on the assessment were inconsistent with the objective medical evidence.  (Doc. 6-3, p. 20).  The ALJ also noted the doctor-patient relationship between Dr. Ruse and Mr. Threadgill was rather short, as "[Dr. Ruse] does not appear to have treated [Mr. Threadgill] prior to June 2011."  (Doc. 6-3, p. 20; Doc. 6-9, pp. 65-67).  The ALJ further noted that the records of Dr. Ruse are inconsistent with the testimony given by Mr. Threadgill at the hearing.  (Doc. 6-3, pp. 20, 39; Doc. 6-9, p. 83).  Therefore the ALJ gave

weight to the opinion of Dr. Ruse only as far as it was consistent with the RFC determined by the ALJ.  (Doc. 6-3, p. 21).

Mr. Threadgill argues that the ALJ improperly discredited Dr. Ruse's medical opinion based on "[t]he ALJ's insinuation that the [length of the] treating relationship between Dr. Ruse and [Mr. Threadgill] was insufficient for him to form an opinion as to [Mr. Threadgill's] restrictions."  (Doc. 9, p. 8).   The applicable regulations discuss the proper methods for evaluating medical opinion evidence and state the following concerning length of the treatment relationship and the frequency of examination:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 404.1527(c)(2)(i).  The record shows that Mr. Threadgill's treatment relationship with Dr. Ruse lasted from June 13, 2011 (Doc. 6-9, pp. 65, 74), to July 28, 2011 (Doc. 6-9, p. 72), and may have extended through October 27, 2011, the date of Dr. Ruse's RFC assessment.  (Doc. 6-9, pp. 82-85).  Thus, the doctor-patient relationship lasted at most four-and-a-half months and possibly as little as

one-and-a-half months.  Consequently, the ALJ did not err when she considered the length of the treatment relationship between Mr. Threadgill and Dr. Ruse.

Mr. Threadgill also notes various medical findings that he claims the ALJ ignored.  (Doc. 9, pp. 9-10).  For example, Mr. Threadgill stated that "January 2008 x-rays of [Mr. Threadgill's] lumbar spine showed disc dessication at the 2,3 level and some degenerative changes in the lumbar facet at the 3,4 4,5 and 5,1 levels." (Doc. 9, p. 9).  The ALJ did not ignore this evidence.  In her decision, she stated that "[a] lumbar x-ray showed degenerative facet changes, but no spondylosis, herniation or nerve impingement.  Exhibit 5F, pages 9 & 11." (Doc. 6-3, p. 18; Doc. 6-8, p. 52).  In any event, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision…is not a broad rejection . . . [of a claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citing *Foote v. Chater,* 67 F.3d 1553, 1561 (11th Cir. 1995)) (internal quotation omitted).  Instead, "[o]ur standard of review is…whether the ALJ's conclusion as a whole was supported by substantial evidence in the record." *Dyer*, 395 F.3d at 1211 (citing *Foote,* 67 F.3d at 1558).  As the ALJ has shown in her factual analysis, she considered the medical record as a whole, and her findings are supported by substantial evidence in the record.

The ALJ's decision also was based on the objective evidence of record. Mr. Threadgill testified that he is able to walk, bike, and swim at his own pace. (Doc. 6-3, p. 19). The ALJ determined that the ability to perform these activities indicates that Mr. Threadgill can perform work at the sedentary level. (Doc. 6-3, p. 19). Under the applicable regulations, sedentary work:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Mr. Threadgill also stated that he had spent time mowing on his tractor, providing further support for the ALJ's conclusion that Mr. Threadgill can perform sedentary work. (Doc. 6-3. p. 19).

Mr. Threadgill also argues that the ALJ failed to properly evaluate the credibility of Mr. Threadgill's testimony of disabling symptoms under the Eleventh Circuit pain standard. The Eleventh Circuit standard for assessing complaints of pain requires "evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Foote*

*v. Chater*, 67 F.3d 1553 (11th Cir. 1995); *Holt v. Sullivan*, 921 F.2d. 1221, 1223 (11th Cir. 1991); *Landry v. Heckler*, 782 F.2d. 1551, 1553 (11th Cir. 1986). Even when objective medical evidence is found to reasonably support a claimant's subjective complaints of pain, the regulations require that the symptoms must be evaluated to determine the extent to which the pain limits the claimant's capacity to work. 20 C.F.R. § 416.929(c). To make that determination, the ALJ should consider medical opinions of both treating and non-treating sources, as well as the claimant's testimony. 20 C.F.R. § 416.929(c).

Here, Mr. Threadgill repeatedly has reported that he is experiencing pain; however, for an ALJ to find that Mr. Threadgill's subjective complaints of pain constitute a valid reason for finding him disabled, those complaints must be reliable and bolstered by objective medical evidence. If the "ALJ discredits subjective testimony, [she] must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

The ALJ concluded that Mr. Threadgill's "statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are not supported by objective medical evidence of record and are inconsistent with the above [RFC assessment]." (Doc. 6-3, p. 18). Additionally,

the ALJ noted that "[Mr. Threadgill's] admitted ability to engage in a variety of daily activities undermined his allegation of disability." (Doc. 6-3, p. 18).

As support for her findings, the ALJ cited the following evidence: Mr. Threadgill has complained to his physicians of knee pain and back pain. He has also complained of numbness and reported pain standing, bending, twisting, stooping, squatting and kneeling. (Doc. 6-3, p. 18). Despite his complaints, the diagnostic testing of Mr. Threadgill's lumbar spine produced benign findings. (Doc. 6-3, p. 18; Doc. 6-8, p. 5). An MRI showed degenerative facet changes in the lumbar spine, but an x-ray of the same area revealed similar degenerative facet changes but no spondylosis, herniation or nerve impingement. (Doc. 6-3, p. 18; Doc. 6-8, pp. 54, 56). Another lumbar MRI showed minimal degenerative disc disease. (Doc. 6-3, p. 18; Doc. 6-9, p. 27).

Concerning knee pain, Mr. Threadgill's MRI indicated "chondromalacia of the articular cartilage of the medial femoral condyle." (Doc. 6-3, p. 18; Doc. 6-8, p. 57). However, an x-ray after the alleged onset date showed normal findings with no evidence of cartilage damage.[3] (Doc. 6-3, p. 18; Doc. 6-9, p. 29).

After reporting constant pain in a medical examination in 2010, Mr. Threadgill reported the ability to "walk, bike and swim and his own pace." (Doc.

---

[3] Though this x-ray yielded normal findings, an x-ray prior to the alleged onset date showed right articular cartilage damage. (Doc. 6-3, p. 18).

6-3, p. 18; Doc. 6-8, p. 67).   He reported that he could not weight train, jump, crawl, bend, or march. (Doc. 6-3, p. 18; Doc. 6-8, p. 66).   The examination also revealed that Mr. Threadgill had a decreased lumbar range of motion, mild paraspinal spasms and tenderness to palpitation in his lumbar spine.  (Doc. 6-3, p. 18; Doc. 6-8, p. 73).  His straight leg raise test was negative, though he was able to heel/toe/tandem walk with pain.   (Doc. 6-3, pp. 18-19).   Additionally, Mr. Threadgill experienced decreased knee range of motion with crepitus and tenderness to palpitation over the patella, but no knee effusion or instability.  (Doc. 6-3, p. 19).  His strength remained a 5/5 as to the upper extremity and 4/5 as to the lower.  (Doc. 6-3, p. 19; Doc. 6-8, p. 73).

Based on the objective medical evidence and the daily activities of Mr. Threadgill, the ALJ properly concluded that "[Mr. Threadgill's] lumbar degenerative disc disease and left knee chondromalacia could reasonably prevent [Mr. Threadgill] from lifting heavy objects and standing for extended periods throughout the day without symptom exacerbation, thereby limiting [Mr. Threadgill] to sedentary work positions." (Doc. 6-3, p. 19).  Substantial evidence supports this conclusion.

Lastly, the ALJ stated that she "does not find [Mr. Threadgill's] allegations that he needs to elevate his legs or take daily naps to be credible or supported by objective medical evidence of record.  Treatment notes do not contain complaints

of excessive fatigue or recommendations that [Mr. Threadgill] elevate his legs." (Doc. 6-3, p. 20).  The record supports this conclusion too.

In sum, the objective medical evidence and Mr. Threadgill's testimony about his daily activities undermine his subjective complaints about pain.  The ALJ did not err in finding those complaints less than credible.[4]

Having examined the available evidence thoroughly, the ALJ determined that Mr. Threadgill is not disabled.  That finding rests on substantial evidence.  The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.

---

[4] Mr. Threadgill complains that in making the credibility determination, the ALJ did not address a report from Dr. Joseph Jowers in which Dr. Jowers stated  that Mr. Threadgill is "disabled due to his chronic conditions."  (Doc. 9, p. 13).  Pursuant to the applicable regulations, opinions that a claimant is disabled or unable to work are not medical opinions; they are opinions on issues reserved to the Commissioner.  20 C.F.R. § 404.1527(d)(1); *see also Lawton v. Cross*, 431 Fed. Appx. 830, 834-35 (11th Cir. 2011) (per curiam) (unpublished).  The regulations add that opinions on issues reserved to the Commissioner are not entitled to deference because the determination of disability is the prerogative of the Commissioner, not the physician.    20 C.F.R. § 404.1527(d)(1), (3).

**CONCLUSION**:

Consistent with the foregoing, the Court concludes the ALJ's decision was based upon substantial evidence and consistent with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.

**DONE** and **ORDERED** this 4th day of August, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE